**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TED and PAULETTE PHILLIPS, individually and as next friends of T.L.P., a minor child,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. CIV-16-561-RAW** |
| **INDEPENDENT SCHOOL DISTRICT NO. 3 OF OKMULGEE COUNTY, a/k/a MORRIS PUBLIC SCHOOLS,** | ) | |
| **Defendant.** | ) | |

**ORDER**

Plaintiffs, the parents of minor T.L.P., bring this action (1) seeking attorney fees pursuant to the Individuals with Disabilities Education Act ("IDEA"), (2) for violation of Section 504 of the Rehabilitation Act, (3) for violation of Title II of the ADA/ADAAA, and (4) for partial appeal of the final administrative decision. Defendant School District ("the District") has filed a counterclaim, presenting its own appeal from the administrative decision.[1] Among other arguments, defendant contends the appeal officer erred in finding T.L.P. was a resident of the school district during the 2013-2014, 2014-2015, and 2015-2016 school years. (#15 at 16-22, ¶¶27-40). The court asked the parties to brief this issue as a preliminary matter (#39).

The IDEA looks to state law for determining the educational responsibilities of school districts. 20 U.S.C. §1413(a)(1). School districts in Oklahoma are not responsible for

[1]The right to such an appeal in the form of a civil action is governed by 20 U.S.C. §1415(i)(2)(A).

providing education services for children that are not residents of their district. 70 O.S. §13-101. A child's residence "for school purposes shall be . . . [t]he legal residence of the parents, guardian, or person having legal custody." 70 O.S. §1-113(A)(1). *See J.P. v Enid Public Schools,* 2009 WL 3104014, *6 (W.D.Okla.2009).

T.L.P. was born on December 4, 2001 and has a diagnosis of Rett syndrome. Her parents initially presented her for enrollment in the District on December 2, 2004. The accompanying paperwork from SoonerStart listed the parents' address as 20254 Highway 266, Henryetta, Oklahoma. The parents were informed that this address was not located within the Morris School District, but rather within the residential boundaries of the Dewar School District. The parents again sought to enroll their daughter in the Morris District at the beginning of the 2005-2006 school year. They claimed to have purchased property within the District's boundaries at 18888 Bristlecone Road in Morris. The District investigated and determined the parents were residing at the Morris address, and T.L.P. was allowed to enroll in the District on December 13, 2005.

During her enrollment, T.L.P. received special education and related services as required by the IDEA. At the beginning of the 2015-2016 school year, she began experiencing increased seizure-like activity while at school. The District sought medical information from the parents but the parents declined to provide such information. At an IEP ("Individualized Education Program") meeting on December 14, 2015, T.L.P.' s IEP team changed her educational placement to homebound services, while awaiting the necessary medical information from her parents. On February 29, 2016, the District received a special

education due process hearing complaint from the parents on behalf of T.L.P. In response, the District's counsel subpoenaed records from various health care providers of T.L.P. Some of these documents indicated the parents' address was the Henryetta address (outside the District's boundaries) rather than the Morris address. The District then began an investigation and concluded the parents were not residing in the District. The District sought dismissal of the parents' due process complaint on this basis, which argument was denied by both Hearing Officer Bost and (on administrative appeal) by Hearing Officer Welsh. T.L.P. stopped attending the District at the end of the 2015-2016 school year.

In an appeal from a decision of a hearing officer following a due process hearing, a district court shall "receive the records of the administrative proceedings," "hear additional evidence at the request of a party," and "basing its decision on the preponderance of the evidence , . . . grant such relief as [it] determines is appropriate." 20 U.S.C. §1415(i)(2)(C).[2] The court uses a "modified de novo" review. *Sytsema ex rel. Sytsema v. Acad. Sch. Dist. No. 20*, 538 F.3d 1306, 1311 (10th Cir.2008). In doing so, the court must give "due weight" to the hearing officer's findings of fact, which are considered prima facie correct. *Id.*

Application of the standard of review is not straightforward here, however, because the findings made by the hearing officers create an unusual posture. Hearing Officer Bost stated "there may be some doubt concerning the residency of the Parents," but concluded that "Equity demands a hearing," based upon the length of time T.L.P and her siblings had

[2]Neither side has requested to present additional evidence as to the residency issue.

attended school in the District and suggestions in the evidence that the District was aware of a residency question earlier but did not take action. (Admin. Rec. 3736-3737). On appeal, Hearing Officer Welsh seemed to make the interpretation that Hearing Officer Bost had made a factual finding of residency. Hearing Officer Welsh purported to affirm this factual finding (citing no evidence), but also found the residency decision could be affirmed on equitable grounds. (Admin. Rec. 3823-3824). Hearing Officer Welsh found the District's argument "disingenuous at best" (Admin. Rec. 3823) and "understated as unconscionable." *Id.* She found that T.L.P. had been enrolled and attended the district since 2005, (receiving special education services from the District during that time) but the District had not raised the issue of residency until the parents made a request for due process. The District had investigated in 2005 and determined residence was proper, but did not launch another investigation until recently. Without using the terms, the hearing officer appeared to invoke a version of waiver or estoppel against the District.[3]

Without a clear factual finding to review, this court's review seems closer to de novo than "modified de novo". The parties have gone into granular detail regarding the evidence, plaintiffs seeking to establish the District's knowledge of a residency issue over the years (to establish waiver or estoppel) and the District seeking to establish that the parents "actively misrepresented" their legal residence in the District.[4] The court finds this evidence

[3]The hearing officer also saw fit to mention that "[t]he District has benefitted from members of Student's family playing sports for the District." *Id.* The court finds this purported factual finding irrelevant.

[4]For example, the District wants the court to infer from the amount of a utility bill that "it is unlikely that anyone inhabited the trailer" at 18888 Bristlecone Road during the pertinent time period. (#48 at 4).

insufficiently clear on either side to make a factual finding with confidence, as indeed the Hearing Officers evidently concluded. Limited to that evidence, the court would reach its conclusion based upon which side bears the burden of proof as to residency. Is it the parents' burden to prove residency in the first instance or is the defendants' burden (having filed a motion to dismiss) to prove non-residency? This is not a simple question either.

The Oklahoma Administrative Code provides that "A school district may, as part of its procedures for determining student residency, require reverification of student residency at the beginning of each school term." OAC §210:10-1-17(e). This seems to place the burden on the student. Subsection (b), however, states that the school district "shall verify" the student's residence. In subsection (c), the Code also makes it incumbent upon the school district to adopt a policy providing "the procedures and criteria to determine if a student is a resident of the school district" . The pertinent Oklahoma statute states that "[e]ach school district board of education shall adopt a policy establishing the requirements for student residency for that district which provides for residence as described in this paragraph." 70 O.S. §1-113(A)(1). Plaintiffs assert there was "apparently" no such policy in place (#43 at 5-6), and defendant has not responded on this point. The absence of a policy leaves a school district with standardless discretion to deny residence, potentially in an arbitrary fashion.[5] In general terms, the Oklahoma Administrative Code ("OAC") provides that a parent may document residence by "proof of provisions of utilities, payment of ad valorem taxes, local

[5]The District notes that, after the investigation and adverse determination, the parents did not appeal. In the court's view, this does not absolve the District of failing to provide standards.

agreements or contract for purchasing/leasing housing," among other methods. OAC §210:10-1-17(c). It appears T.L.P.'s parents submitted a utility bill each year, and the District accepted it as adequate documentation.

As the District notes, residency is determined each school year. (#44 at 10). This is reflected in the OAC at §210:10-1-17(e). Once the student has been enrolled, however, (as T.L.P. was for the 2015-2016 term), she is allowed to remain. "If, during the course of the school year a dispute arises as to the residence of a student who is enrolled and attending school, the student shall be allowed to continue in that school until these dispute procedures have been exhausted." §210:10-1-17(f)(2). Here, the dispute proceedings evidently extended beyond the conclusion of the school year. Thus, T.L.P. was properly allowed to continue in the District for the 2015-2016 school year. Defendant's position is that, as regards the student's rights under the IDEA, the residency question remains open and the District is not responsible for that school year, and indeed previous years if non-residency is established.[6]

Ultimately, the court reaches the same conclusion as the Hearing Officers, but by a different route. By failing to have a policy in place, the District gave the parents no guidance as to how residency was to be resolved. By failing to make a <u>timely</u> and proper residency determination for the 2015-2106 school year, the District <u>assumed</u> responsibility. Needless to say, under this analysis the District's attempt to reach back and "negate" T.L.P.'s

[6]As previously stated, the District only challenges residency for the 2013-14, 2014015 and 2015-16 school years, based upon what it argues is a two-year statute of limitations. (#44 at 1 n.1).

enrollment for IDEA purposes during the 2013-2014 and 2014-2015 school years based on residency is unavailing.[7]

The implication of the OAC (and the IDEA) is that the District must make its determination of residency in a timely fashion. The court finds that the District's argument (that residence remains an open question, capable of being raised years after the fact) is incompatible with the IDEA. The Act requires each local education agency (i.e., school district) to have in effect an IEP for each child with a disability within the agency's jurisdiction, "[a]t the beginning of each school year." 20 U.S.C. §1414(d)(2)(A). It is an absurd result if a school district need not resolve the residency issue before the beginning of the school year, let alone raising it two years later. The District's argument essentially is that its strict interpretation of state law can frustrate the purpose of the IDEA, a federal Act. The court disagrees.

The facts here differ substantially from those in *Burdick v. Independent School Dist.*, 702 P.2d 48 (Okla.1985), which noted that "[g]enerally, Oklahoma jurisprudence does not allow the application of estoppel against the state, the political subdivisions or agencies, unless its interposition would further some principle of public policy or interest." *Id.* at 53

---

[7]The District cites *D.L. v. Unified School District*, 302 F.3d 1223 (10th Cir.2004) for the proposition that a student's non-residence in the school district retroactively absolves the district of responsibility under the IDEA. This court does not so read that decision, which in any event interprets Kansas law. The District also cites a 1953 opinion of the Oklahoma Attorney General (#44-1) that parents moving into a district for the sole purpose of having their children attend school (as opposed to residing permanently) do not establish a legal residence in the district. There would seem doubt that a parent would be aware of a 1953 Attorney General opinion. In the court's view, if a school district wishes to rely upon such an opinion, it must be published as part of the district's residency policy and the facts investigated in a timely manner.

(footnote omitted). Nevertheless, under the facts before it, this court finds that estoppel may be invoked against the District in this case.

It is the order of the court that no aspect of this action will be dismissed based upon the issue of student residency in the School District. A scheduling order will be entered as to the merits determination.

**ORDERED THIS 16th DAY OF JANUARY, 2018.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma