## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Ted and Paulette Phillips, Individually and as Next Friends of T.L.P., a minor child,<br><br>                             Plaintiffs,<br><br>        v.<br><br>Independent School District No. 3 of Okmulgee County, a/k/a Morris Public Schools,<br><br>                           Defendant. | Case No.   16-CIV-561-RAW |

### ORDER

Plaintiffs, the parents of minor daughter T.L.P., bring this action seeking (1) attorney fees pursuant to the Individuals with Disabilities Education Act ("IDEA"), (2) damages for violation of Section 504 of the Rehabilitation Act, (3) damages for violation of Title II of the ADA/ADAAA, and (4) partial appeal of the final administrative decision. Defendant School District ("the District") has filed a counterclaim (#15), presenting its own appeal from the administrative decision.[1]  The court previously rejected the District's argument that the appeal officer erred in finding T.L.P. was a resident of the school district during the 2013-2014, 2014-2015, and 2015-2016 school years.   (*See* #49).

T.L.P. was born on December 4, 2001 and has a diagnosis of Rett syndrome.   Her parents initially presented her for enrollment in the District on December 2, 2004.   The accompanying paperwork from SoonerStart listed the parents' address as 20254 Highway

---

[1]The right to such an appeal in the form of a civil action is governed by 20 U.S.C. §1415(i)(2)(A).

266, Henryetta, Oklahoma. The parents were informed that this address was not located within the Morris School District, but rather within the residential boundaries of the Dewar School District. The parents again sought to enroll their daughter in the Morris District at the beginning of the 2005-2006 school year. They claimed to have purchased property within the District's boundaries at 18888 Bristlecone Road in Morris. The District investigated and determined the parents were residing at the Morris address, and T.L.P. was allowed to enroll in the District on December 13, 2005.

During her enrollment, T.L.P. received special education and related services as required by the IDEA. At the beginning of the 2015-2016 school year, she began experiencing increased seizure-like activity while at school. The District sought medical information from the parents but the parents declined to provide such information. At an IEP ("Individualized Education Program") meeting on December 14, 2015, T.L.P.'s IEP team changed her educational placement to homebound services, while awaiting the necessary medical information from her parents. On February 29, 2016, the District received a special education due process hearing complaint from the parents on behalf of T.L.P. In response, the District's counsel subpoenaed records from various health care providers of T.L.P. Some of these documents indicated the parents' address was the Henryetta address (outside the District's boundaries) rather than the Morris address. The District then began an investigation and concluded the parents were not residing in the District. The District sought dismissal of the parents' due process complaint on this basis,

which argument was denied by both Hearing Officer Bost and (on administrative appeal) by Hearing Officer Welsh. T.L.P. stopped attending the District at the end of the 2015-2016 school year.

In an appeal from a decision of a hearing officer following a due process hearing, a district court shall "receive the records of the administrative proceedings," "hear additional evidence at the request of a party," and "basing its decision on the preponderance of the evidence , . . . grant such relief as [it] determines is appropriate." 20 U.S.C. §1415(i)(2)(C).[2] The court uses a "modified de novo" review. *Sytsema ex rel. Sytsema v. Acad. Sch. Dist. No. 20,* 538 F.3d 1306, 1311 (10th Cir.2008). In doing so, the court must give "due weight" to the hearing officer's findings of fact, which are considered prima facie correct. *Id.*

As previously stated, plaintiffs' fourth cause of action in their complaint is "partial appeal of final administrative decision." They assert: "Plaintiffs requested as a part of the due process hearing that the District be ordered to place T.L.P. in a residential facility" and they "are aggrieved by the final administrative decision because it did not order the District to place T.L.P. in a residential facility." (#2 at ¶¶78 & 79). Hearing Officer Bost ("Bost") stated "[t]he Parent's didn't quantify anything. There was no evidence where they

---

[2]There is no right to jury trial under this provision. *See Loren F.v. Atlanta Indep. Sch. Sys.,* 349 F.3d 1309, 1313-14 (11th Cir.2003). Defendant filed a motion to admit additional evidence (#53), as supplemented (#55). The motion was granted by minute order (#56). The supplement was then filed (#57).

thought the Student should be."    Also, while "residential placement is the remedy requested by the Parents, I am not convinced by the evidence that it is appropriate."   He found the parents had not proven that "Heartspring" (evidently the   Heartspring facility in Wichita, Kansas) was a proper facility for T.L.P., and Bost more generally raised the issue of "least restrictive environment."   (Admin. Rec. 3748-49).

On administrative appeal, Appellate Review Officer Welsh ("Welsh") upheld the decision, also finding the parents' presentation inadequate.   Specifically, aside from parents' expert witness (who testified that T.L.P. could be educated in public school), "[t]here was no other mention of residential placement, and no other evidence presented." (#15-1 at 16).   She stated that the parents (on administrative appeal) sought to reopen the record and present testimony from Heartspring officials, but this was deemed testimony which could have been presented at the hearing.   Finally, Welsh noted that during the pendency of the administrative appeal, the parents had moved T.L.P. to another district. Accordingly, she reasoned, providing a referral to the residential facility at Heartspring was not an appropriate remedy.  *Id.*

This court affirms, with primary emphasis on the last point.   T.L.P. is no longer a student in the Morris School District and has not been since the conclusion of the 2015-2016 school year.   Therefore, this court has no authority in this lawsuit to compel the defendant to provide a referral to the residential facility of Heartspring.

The decision below as to residential placement is upheld on other grounds as well. Plaintiffs cite *Jefferson Cty. Sch. Dist. R-1 v. Elizabeth E. ex rel. Roxanne B.,* 702 F.3d 1227 (10th Cir.2012). That decision, however, involved the issue of whether parents' unilateral placement of their child in a private school without the consent of or referral by the school district is reimbursable under the IDEA. Generally, "public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice." *Florence Cnty. Sch. Dist. Four v. Carter,* 510 U.S. 7, 15 (1993).

Another option exists for parents. They may remove their child from public school, enroll her in private school, and request reimbursement from the school district. Parents who make unilateral placements at a private school, however, do so at their own financial risk. *Elizabeth E.,* 702 F.3d at 1232. In that case, parents sought reimbursement from the school district relating to the parents' unilateral action. In the case at bar, by contrast, plaintiffs did not unilaterally move T.L.P. to a private school. Obviously, therefore, plaintiffs are not entitled to reimbursement, but argue that the factors in *Elizabeth E.* should be used to determine if their request for residential placement should be granted.

To the extent the test set forth in *Elizabeth E.* is applicable to these facts, this court agrees with the decision below that the parents did not bear their burden of demonstrating that "a private placement under IDEA is permissible only if it is necessary to supply the

child with a meaningful <u>educational</u> benefit the public school has proven unable or unwilling to supply – not to address purely social, emotional, or medical needs." *Id.* at 1244 (Gorsuch, J., concurring)(emphasis in original). In the case at bar, Appellate Review Officer Welsh found that the only testimony presented on the issue of residential placement was of the parents' expert, who testified that the student <u>could</u> be educated in public school. "There was no other mention of residential placement, and no other evidence presented. ' (#15-1 at 16). Under the present record, the court finds residential placement was properly denied.

The District has filed a cross-appeal from the decision below. The IDEA provides that children with disabilities are entitled to a "free appropriate public education," or FAPE. *See* 20 U.S.C. §1401(9); §1412(a)(1)(A). A FAPE is provided mainly through implementation of "individualized education programs," or IEPs. *See* 20 U.S.C. §1414(d)(1)(A). The District appeals the decision below that T.L.P. was denied a FAPE.

The Supreme Court has set forth a two-pronged test to determine whether school districts provide a FAPE: (1) whether the school district complied with the procedures set forth in the IDEA, and (2) whether the IEP was uniquely tailored and reasonably calculated to provide the child with some educational benefit.[3] *Bd. of Educ. v. Rowley,* 458 U.S. 176, 206-07 (1982). As to this second, or "substantive" prong, the IEP must be

---

[3]A procedural violation only gives rise to a substantive deprivation of a FAPE under certain circumstances. *See* 20 U.S.C. §1415(f)(3)(E)(ii); 34 C.F.R. §300.513(a)(2).

"reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances. . . [T]he question is whether the IEP is reasonable, not whether the court regards it as ideal." *Endrew F. v. Douglas Cty. Sch. Dist. RE-1,* 137 S.Ct. 988, 999 (2017)(emphasis in original). As this court reads the decision of AO Welsh, she appears to have based the conclusion that T.L.P. was denied a FAPE on both prongs. A procedural violation took place because "[t]here is zero evidence on any of the relevant IEP's that related services were considered." (#51-1 at 14). As to a substantive violation, Welsh found that T.L.P. had "basically made no educational progress over the last two years," but had "made progress, even if slow, in her private therapies." *Id.* She then ordered wide-ranging relief.

Defendant, however, identifies what may be a fundamental flaw with much of the decision below. The relief awarded (#15-1 at 22-24) is forward-looking, i.e., it reflects directives to the District for actions that must be taken in the future. Again, however, it is undisputed that T.L.P. no longer attends school in the District. (*See* #15 at 20, ¶37; #18 at 4, ¶37. *See also* #64 at 2). Therefore, any request for the award of prospective relief is moot. *See Moseley v. Bd. of Educ. of Albuquerque Pub. Schs.,* 483 F.3d 689, 692-94 (10th Cir.2007)(student graduated); *Brown v. Bartholomew Consol. Sch. Corp.,* 442 F.3d 588, 596-600 (7th Cir.2006)(student moved). To the extent a student seeks compensatory

relief, however, the appeal is not moot. *See Garcia v. Bd. of Educ. of Abuquerque Pub. Sch.,* 520 F.3d 1116, 1124 (10ᵗʰ Cir.2008).[4] This fine distinction must now be addressed.

Compensatory education is not defined within the IDEA and is a judicially-created remedy. *Ferren C. v. School Dist. of Philadelphia,* 612 F.3d 712, 717 (3d Cir.2010).[5] It aims to put a student in the position she would be in absent the FAPE denial. *B.D. v. District of Columbia,* 817 F.3d 792, 798 (D.C.Cir.2016). It has been defined as "discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide FAPE to a student." *Maez,* 2017 WL 3610546, *7 (citations omitted).[6] "At the same time, however, a [Hearing Officer] does not have unbounded discretion in fashioning equitable relief under [the IDEA]." *Id.*

The crux of the relief AO Welsh ordered requires the District to "retain the services of Dr. Bonnie McBride, Associate Professor at the University of Oklahoma." (#15-1 at 22).

---

[4]Although the Tenth Circuit has not spoken, the weight of authority is "[t]here is no claim for money damages or punitive damages under the IDEA." *Bd. of Educ. v. Maez,* 2017 WL 3610546, *9 (D.N.M. 2017). To address an issue raised by defendant (#61 at page 36 of 41 in CM/ECF pagination, n.6), this court sees no basis to enforce the award of prospective relief against T.L.P.'s new school district. That district was not a party to the proceedings below, and there is "an initial presumption that nonparties are not bound by a judgment." 18A Wright, Miller & Cooper, *Federal Practice and Procedure,* §4449 at 327 (3ʳᵈ ed.2017). The presumption may be overcome, but this court sees nothing in the record to justify doing so.

[5]When school districts fail to provide FAPE, district courts shall "grant such relief as the court determines is appropriate." 20 U.S.C. §1415(i)(2)(C)(iii).

[6]This very definition, however, uses the word "prospective," which is the type of relief rendered moot by the student changing districts.

8

It is also ordered that Dr. McBride shall "complete a full independent educational evaluation (IEE) at the District's expense." *Id.* Dr. McBride is also ordered to "be a part of the IEP team meeting and development of the IEP." *Id.* at 23. Dr. McBride (or her designee) are given the authority to name a professional to "establish a behavior intervention plan (BIP) to work on Student's negative behaviors." *Id.* The Student is to have a full-time paraprofessional assigned to her and that paraprofessional is to meet with Dr. McBride or her designee at least once per month. *Id.* A full range of related services are to be considered and discussed with Dr. McBride as part of the IEP meeting. *Id.* If related services or extended school year (ESY) are deemed appropriate (presumably by Dr. McBride) they are also ordered. *Id.* at 24.

In *Meza v. Bd. of Educ. of the Portales Mun. Schs.,* 2011 WL 1128876 (D.N.M.), the district court granted an injunction in part, stating "the Court is convinced that Portales Schools will likely be successful in proving that the [Hearing Officer] exceeded her statutory authority when she delegated ultimate authority over [the student's] FAPE to a third party and [the student's] IEP team." *Id.* at *10. In that case, the Hearing Officer directed the school district to retain the services of a third party/state agency (the University of New Mexico Center for Developed and Disability) to assist in developing an IEP. First, the district court found that, under the IDEA, the hearing officer "makes the decision and retains control to change the relief as appropriate." *Id.* at *14. The hearing officer's

remedial order was therefore an improper delegation of authority. The same conclusion

seems appropriate here.[7]

     The decision below sought to characterize all the relief awarded as constituting

"compensatory services for the District's failure to prove FAPE." (#15-1 at 22). The

District acknowledges that "the only remedy AO Welsh could lawfully order in this case is

compensatory education" (#64 at 2 n.1), but disagrees with Welsh's definition. Rather,

the District contends that "the only relief which AO Welsh awarded that is within her

discretion and constitutes permissible 'compensatory education' is for the District to

conduct independent OT, PT and PT speech evaluations and **if** those evaluations had

determined that services were appropriate, then an award of 'makeup' services would have

been appropriate." (#61 at page 35 of 41 in CM/ECF pagination)(emphasis in original).[8]

---

[7]As a matter of logic, all of the relief involving Dr. McBride appears to still fall under the rubric of prospective relief, rather than compensatory relief, and is therefore moot in this case. The court nevertheless addresses whether the relief (even viewed as compensatory education) was an abuse of discretion on AO Welsh's part, to determine whether some award of monetary equivalent relief is appropriate.

[8]The highlighted word raises another issue to which the court wishes to devote at least a footnote. The IDEA provides for federal district court jurisdiction only to review final findings and decisions of administrative proceedings. 20 U.S.C. §1415(i)(2)(A); *M.E. v. Buncombe Cnty. Bd. of Educ.,* 72 Fed.Appx. 940, 941 (4th Cir.2003). In one sense, the ordering of additional evaluations is contingent (not final) relief because it is the result of the additional evaluations that would determine whether school-based related services of this type were necessary for the student to receive FAPE. That is to say, the hearing officer would not actually issue a final decision on this issue until he or she reviewed the results of the additional evaluations ordered. Still, it is statutorily declared that "A decision made in a [due process hearing] . . . shall be final . . . " 20 U.S.C. §1415(i)(1)(A). The court will treat even the contingent relief ordered as constituting a final decision. (As a practical matter, remanding this issue to the hearing appeal process would be futile in this case because the student is now in another district.)

Plaintiffs' response does not address this precise argument, but does contend that "T.L.P. . . . cannot make any progress at school in the absence of speech-language therapy, physical therapy, and occupational therapy."  (#65 at page 26 of 33 in CM/ECF pagination).

The court finds (as defendant appears to concede) that no improper delegation exists as to the speech, physical therapy and occupational therapy evaluations ordered by AO Welsh.   These are discrete remedies which can be accomplished, while the hearing officer retains ultimate control.   They simply provide raw data, to be incorporated into the preparation of an IEP.   The parents are given the ability to "cut out" Dr. McBride from the process by reaching agreement with the school district as to who will conduct the evaluations.   To clarify, the court finds that the remedies ordered by the appeal officer (with the exception of the evaluations) are (1) if viewed as compensatory relief, reversed as constituting improper delegation; and (2) if viewed as prospective relief, dismissed as moot because T.L.P. has moved from defendant District to another district.

As to the evaluations, AO Welsh (as a matter of logic) has no authority to order the district to conduct the actual evaluations, because T.L.P. is no longer a student within the district.  The court will nevertheless characterize this aspect of relief as compensatory relief (i.e., not moot) and address it on the merits.  Although it constitutes directing that an action be taken, that action can be reduced to a monetary sum.  The rationale of compensatory education is that the school district against whom such a remedy is ordered is required to pay for it.  This is not contrary to the previous quotation that there is no

claim for monetary relief under the IDEA. *See* n. 4 of this order. Rather, monetary recovery under the IDEA "is limited to <u>compensatory</u> <u>education</u> and equitable remedies that involve the payment of money, such as reimbursements for educational expenses that would have been borne by defendants in the first instance had they properly developed and implemented an IEP." *Diaz-Fonseca v. Puerto Rico,* 451 F.3d 13, 19 (1st Cir.2006)(emphasis added); *Garcia v. Bd. of Educ. of Albuquerque Pub. Sch.,* 2007 WL 5023652, *3 (D.N.M.2007), *aff'd,* 520 F.3d 1116 (10th Cir.2008). If the court were to uphold the ordering of the evaluations, the court would seek to quantify into a monetary sum the cost of the evaluations and impose that cost on the defendant.

Defendant's core argument against the evaluations is that previous evaluations "have found that school based, direct services for PT, OT, and speech are **not** recommended/appropriate for the Student." (#61 at page 35 of 41 in CM/ECF pagination, n.5)(emphasis in original), citing the supplemental record (#57) for this proposition. *(See also* #61 at pages 17-19 of 41 in CM/ECF pagination.) Upon review, the court agrees with defendant. Therefore, the court finds the remedy ordered as to the evaluations was based on findings which are against the weight of the evidence and thus an abuse of discretion.[9]

---

[9]Welsh's contrary finding *as to this narrow issue* is conclusory and is not based on citations to the record. The court has given Welsh's conclusion "due weight" as required, but finds it does not stand on review.

As previously stated, plaintiffs' first cause of action in their complaint (#2 at 14) is a request for attorney fees and costs as the prevailing party in the administrative due process proceeding. Under the court's ruling, plaintiffs are no longer the prevailing party. This cause of action will be addressed in the final judgment entered at the ultimate conclusion of this litigation.

Also as previously stated, plaintiffs have additionally asserted claims for violation of Section 504 of the Rehabilitation Act (second cause of action) and violation of Section II of the ADA/ADAAA (third cause of action). Defendant does not contest plaintiffs' jury demand as to those claims. (#51 at 1). Therefore, an order shall be sent to the parties in due course as to disclosures, discovery schedule and trial schedule.

The formality of a legal opinion does not indicate that the court is insensitive to the continuing ordeal of T.L.P.'s parents in seeking the best education for her. The law in this area is complex and the court believes it has followed that law as to the issues presented, but the jury trial will address its own distinct issues.

It is the order of the court that plaintiffs' appeal on the issue of residential placement at the district's expense is hereby denied. The defendant's appeal from the administrative proceeding is granted.

**ORDERED THIS 20th DAY OF NOVEMBER, 2018.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma

13